**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| RAY KLEIN, INC., d/b/a PROFESSIONAL CREDIT SERVICE, | |
|---|---|
| Plaintiff, | |
| vs. | |
| BOARD OF TRUSTEES OF THE ALASKA ELECTRICAL HEALTH & WELFARE FUND, | Case No. 3:16-cv-00098-SLG |
| Defendant. | |

**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Before the Court at Docket 86 is Ray Klein, Inc. d/b/a Professional Credit Service's ("PCS") Motion for Summary Judgment. At Docket 96 is Defendant Board of Trustees of the Alaska Electrical Health and Welfare Fund's ("Fund") Motion for Summary Judgment, filed under seal. Both motions have been fully briefed.[1] Oral argument was not requested and was not necessary to the Court's decision. As indicated by the Court on the record at the recent court hearing in this matter, summary judgment will be granted to the Fund.

**I. Background**

The Alaska Electrical Health and Welfare Fund ("Fund") is a self-insured joint labor-management welfare trust fund created pursuant to Section 302(c) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c), and ERISA, 29 U.S.C. § 1001, *et seq.*[2] The Fund provides medical, prescription drug, dental, vision, and disability

---

[1] Docket 106 (Opp.); Docket 110 (Reply; Docket 104 (Opp.); Docket 108 (Reply).

[2] Docket 97 (Stokes Declaration) at 2, ¶ 3.

benefits to Plan Participants: electrical workers and their dependents ("Eligible Persons") in Alaska.[3] The Fund's Summary Plan Description ("Plan") states that the Fund will pay a percentage of the medically necessary healthcare costs by Eligible Persons for "Covered Charges."[4] The Plan defines these "Covered Charges" as "the actual costs charged for services to the extent that such charges are Usual, Customary, and Reasonable [("UCR")] for the area and the type of service."[5]

In June 2009, the Fund entered into a Master Services Agreement ("MSA") with Viant Payment Systems, Inc., Beech Street Corporation, and ppoNEXT, Inc. (collectively referred to as "Beech Street").[6] Under the terms of that agreement, the Fund agreed to pay Beech Street a specific dollar amount per Plan Participant per month in exchange for access to the discounts that Beech Street had negotiated with participating providers.[7] The MSA also provides that the Fund is obligated to pay Beech Street's participating providers, pursuant to the Fee Schedule of the Facility Service Agreement.[8] The MSA states, "A Payor must pay a Participating Provider the amount payable under the

---

[3] Docket 97 at 2, ¶ 3.

[4] Docket 97 at 2, ¶ 6; Docket 97-1 (Summary Plan Description) at 58.

[5] Docket 97-1 at 114.

[6] Docket 97-2 (Master Services Agreement).

[7] Docket 97 at 4, ¶ 13.

[8] Docket 97 at 3, ¶14; Docket 97-2 at 17.

3:16-cv-00098-SLG, *Klein v. Board of Trustees of the Alaska Electrical Health & Welfare Fund*
Order re Cross-Motions for Summary Judgment
Page 2 of 15

applicable Plan for Covered Services."[9] Providence Health and Services ("Providence") is a participating provider in the Beech Street Network.[10]

On March 16, 2014, Baby B and Baby P (the "Twins") were born at Providence Alaska Medical Center in Anchorage.[11] The Twins are qualified as Eligible Persons under the Fund's Master Service Agreement.[12] The Twins were born approximately 13 weeks premature, and required extensive care and treatment at Providence. Providence billed the Fund $1,627,835.71 for Baby B and $2,410,629.05 for Baby P, which totals $4,038,464.76.[13]

The instant dispute arose when the Fund, after a review by its medical consultants, denied $1,192,297.45 of the billed charges, asserting that they were not covered under the Fund's plan.[14] Plaintiff PCS, on behalf of Providence, seeks a judgment from the

---

[9] Docket 97-2 at 17.

[10] Docket 101-3 (Facility Service Agreement) at 6.

[11] Docket 19 (Compl.) at 4, ¶ 11.

[12] Docket 19 at 4, ¶ 12.

[13] Docket 97 at 4, ¶ 16; *see* Docket 19 at 4, ¶ 19.

[14] Docket 97 at 4, ¶ 18. Specifically, the Fund disputed its liability for charges for Prolacta, a medical food or formula made from human breast milk, on the basis that "the Plan specifically excludes nutritional or dietary supplements or substitutes, and nonprescription medications or supplements." Docket 96 at 8. The Fund disputed a portion of the charges for oxygen on the basis that "these services are routine in intensive care units and should be included within the room rates[.]" Docket 96 at 8. The Fund also denied charges for pulse oximetry services, primarily on the basis that these tests should have been included within the charge for routine services. Docket 96 at 10–11. The Fund also asserted that Providence had failed to produce documentation showing the results of the pulse oximetry tests and that there were other inconsistencies in the medical documentation which provided grounds for denial. Docket 96 at 11–12.

3:16-cv-00098-SLG, *Klein v. Board of Trustees of the Alaska Electrical Health & Welfare Fund*
Order re Cross-Motions for Summary Judgment
Page 3 of 15

Fund for this amount.[15] PCS asserts that "[t]he Fund failed to pay sums due, or delayed payment, for Covered Services provided to Eligible Persons under the Agreement."[16] PCS alleges breach of contract and breach of the covenant of good faith and fair dealing by the Fund for its refusal to pay the remaining charges.[17]

## II. Standard for Summary Judgment

Federal Rule of Civil Procedure 56(c) directs a court to grant summary judgment if the movant "show[s] that there is no genuine issue as to any material fact and that [the movant] is entitled to a judgment as a matter of law." The burden of showing the absence of a genuine dispute of material fact initially lies with the moving party.[18] If the moving party meets the burden, the non-moving party must present specific factual evidence demonstrating the existence of a genuine issue of fact.[19] The non-moving party may not rely on mere allegations or denials. Rather, the party must demonstrate that enough evidence supports the alleged factual dispute to require a finder of fact to make a determination at trial between the parties' differing versions of the truth.[20]

---

[15] Neither Providence nor PCS has attempted to collect any of the denied amounts from the Plan Participant. Docket 96 at 6 n.5.

[16] Docket 19 at 6, ¶ 27. It is not clear which agreement PCS is referring to here.

[17] The Fund initially filed a Complaint to Enjoin Arbitration Proceedings, at Docket 1. The parties later stipulated that PCS would consent to jurisdiction in federal court and waive any right to arbitrate and the Fund would dismiss its existing complaint. Docket 18 (Order). PCS's subsequent Counterclaim, at Docket 19, was then designated as the Complaint in this action.

[18] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[19] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[20] *Id.* (citing *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1968)).

3:16-cv-00098-SLG, *Klein v. Board of Trustees of the Alaska Electrical Health & Welfare Fund*
Order re Cross-Motions for Summary Judgment
Page 4 of 15

When considering a motion for summary judgment, a court views the facts in the light most favorable to the non-moving party and draws "all justifiable inferences" in the non-moving party's favor.[21] To reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party."[22] If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[23]

The basis for the Court's jurisdiction in this case is diversity under 28 U.S.C. § 1332.[24] A federal court sitting in diversity jurisdiction generally applies the substantive law of the forum state.[25] However, "ERISA preemption is a question of federal law."[26]

## III. Discussion

The Fund asserts that because PCS's claims relate to an ERISA plan, the claims are preempted.[27] "ERISA's preemption provision, 29 U.S.C. § 1144(a), provides that ERISA's provisions shall generally 'supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this

---

[21] *Id.* at 255.

[22] *Id.* at 248.

[23] *Id.* at 249–50.

[24] Docket 19 at 2, ¶ 4.

[25] *Erie v. Tompkins,* 304 U.S. 64, 78 (1938).

[26] *Carpenters Ret. Tr. of W. Washington v. Healthy Homes NW LLC*, 2008 WL 2230754, at *4 (W.D. Wash. May 29, 2008) (citing *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 830–31 (1988)).

[27] Docket 96 at 13–17.

3:16-cv-00098-SLG, *Klein v. Board of Trustees of the Alaska Electrical Health & Welfare Fund*
Order re Cross-Motions for Summary Judgment
Page 5 of 15

title and not exempt under section 1003(b) of this title.'"²⁸ The Ninth Circuit has held that "[a] common law claim 'relates to' an ERISA plan 'if it has a connection with or reference to such a plan.'"²⁹ "In determining whether a common law claim has 'reference to' an ERISA plan, the focus is whether the claim is premised on the existence of an ERISA plan, and whether the existence of the plan is essential to the claim's survival."³⁰ "In evaluating whether a claim has a 'connection with' an ERISA plan, we use a 'relationship test' that focuses whether the 'claim bears on an ERISA-regulated relationship, *e.g.,* the relationship between plan and plan member, between plan and employer, between employer and employee."³¹

Here, PCS's claims against the Fund are based on its assertion that the Fund "failed to pay sums due, or delayed payment, for Covered Services provided to Eligible Persons under the Agreement."³² PCS's briefing on the summary judgment motions focuses on the Master Services Agreement executed between the Fund and Beech Street and its affiliates.³³ The MSA states:

> A Payor must pay a Participating Provider the amount payable under the applicable Plan for Covered Services within 30 calendar days of receipt of a complete or clean claim (as that term is defined under applicable law) from

---

²⁸ *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1171–72 (9th Cir. 2004).

²⁹ *Oregon Teamster Employers Trust v. Hillsboro Garbage Disposal, Inc.*, 800 F.3d 1151, 1155 (9th Cir. 2015) (citations omitted).

³⁰ *Id.* (quoting *McDowell*, 385 F.3d at 1172).

³¹ *Id.* at 1156 (quoting *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1082 (9th Cir. 2009)).

³² Docket 19 at 6.

³³ *See, e.g.*, Docket 86 at 2–3. The Fund asserts that it was not provided with a copy of Facility Services Agreement, executed between Beech Street and Providence, until this litigation. Docket 20 (Answer) at 2, ¶ 8.

3:16-cv-00098-SLG, *Klein v. Board of Trustees of the Alaska Electrical Health & Welfare Fund*
Order re Cross-Motions for Summary Judgment
Page 6 of 15

> the Participating Provider or within the timeframe required by the applicable state's prompt payment of claims law. Timely payment of the Fee Schedule will be payment in full for Covered Services. In the event of failure to timely pay, the Provider Contract discount may be rescinded and, in such event, Payor will pay the Participating Provider the amount payable under the applicable Plan without the application of the Fee Schedule.[34]

The MSA in turn defines "Covered Services" as "health care services provided pursuant to an Eligible Person's Plan."[35] The Plan, in turn, defines Covered Charges as "the actual costs charged for services to the extent that such charges are Usual, Customary, and Reasonable for the area and type of service."[36]

As covered dependents of a Fund participant, the Twins' treatment at Providence resulted in a total of $4,038,464.76 in charges. PCS seeks payment of the disputed portion of those charges. The Fund defends by asserting that the disputed charges "were not a covered benefit under the Fund's plan."[37] The dispute here centers on whether certain services provided to the Twins by Providence were not "Usual, Customary, and Reasonable for the area and type of Service," so as to fall outside the Plan's definition of Covered Charges.[38]

PCS's Complaint asserts that the Fund's denials of payment are not warranted and constitute a breach of contract.[39] There is no dispute that the Plan at issue is governed

---

[34] Docket 97-2 at 17.

[35] Docket 97-2 at 10.

[36] Docket 97-1 at 114.

[37] Docket 20 at 4, ¶ 20.

[38] *See* Docket 96 at 3, 8, 10–12.

[39] Docket 86 at 2–4; *see* Docket 19 at 5 ("The outside medical consultants [retained by the Fund] did *not* identify any services that were substantially inconsistent with the pre-approved plan of

3:16-cv-00098-SLG, *Klein v. Board of Trustees of the Alaska Electrical Health & Welfare Fund*
Order re Cross-Motions for Summary Judgment
Page 7 of 15

by ERISA. However, PCS maintains that "[s]ince the Fund is not relying on Plan language due to the complete and total silence of the Plan on the issue of billing guidelines and practices, PCS's claim does not relate to Plan terms; and therefore ERISA preemption does not apply."[40] And yet, PCS's Complaint acknowledges the central role that the Plan plays in the dispute between the Fund and PCS, as it alleges that "[p]arties like the Fund ('Payors') are responsible for the payment of medical services covered by the Payor's plan ('Covered Services') that are medically necessary ('Medically Necessary') on behalf of the plan's beneficiaries ('Eligible Persons')."[41]

> In arguing against preemption, PCS describes its case as follows:
>
> PCS is suing the Fund not for "covered services" as the Defendant claims in their Motion, but as an assignee of the independent third-party medical provider under the various contract agreements that were formed between each party and the intermediary. The issue in this case is damages for medical services that were performed but not paid under the terms of the contracts, which provided a discounted rate for services under terms of those plans and therefore not subject to ERISA preemption.[42]

However, PCS is unable to escape the fact that the terms of the Fund's ERISA Plan dictate the services the Fund covers, which eviscerates PCS's arguments that its claims do not relate to the Fund's Plan. PCS also rejects the Fund's objections based on the Fund's argument that the charges do not meet the UCR standard set forth by the Plan,

---

treatment or McKesson InterQual guidelines. The outside medical consultants also did *not* identify any services that were not Medically Necessary. . . . The Fund's failure to pay the amount due is inconsistent with the agreed Fee Schedule, and contrary to the Fund's payments under the Fee Schedule for these same Covered Services for other Eligible Persons, and for Baby B when he was readmitted.").

[40] Docket 110 at 3.

[41] Docket 19 at 2–3.

[42] Docket 104 at 8.

3:16-cv-00098-SLG, *Klein v. Board of Trustees of the Alaska Electrical Health & Welfare Fund*
Order re Cross-Motions for Summary Judgment
Page 8 of 15

asserting that the charges are in line with Medicare guidelines.[43] However, even if the Fund's UCR standards are vague, as PCS seems to suggest, it does not mean that the Fund's standards are not determinative of the disputed charges.

In *Shaw v. Delta Air Lines, Inc.*, the Supreme Court presented a broad view of ERISA preemption under ERISA § 514(a), 29 U.S.C. § 1144(a).[44] In *Shaw*, the plaintiff employees claimed that their ERISA plans "did not provide benefits to employees disabled by pregnancy as required by the New York Human Rights Law and the State's Disability Benefits Law."[45] Defendants argued that the claims were preempted; Plaintiffs argued that because their claims fell within the preemption exception of § 514(d), which states that § 514(a) "shall not be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States."[46] Plaintiffs asserted that in their case, "pre-emption of state fair employment laws would impair and modify Title VII because it would change the means by which it is enforced." In holding the plaintiffs' claim were preempted, the Court held, "We have no difficulty in concluding that the Human Rights Law and Disability Benefits Law 'relate to' employee benefit plans."[47] The Court recognized that "Congress used the words 'relate to' in § 514(a) in their broad sense."[48]

---

[43] Docket 104 at 2.

[44] 463 U.S. 85 (1983).

[45] *Id.* at 92.

[46] *Id.* at 100–01.

[47] *Id.* at 96.

[48] *Id.* at 98.

3:16-cv-00098-SLG, *Klein v. Board of Trustees of the Alaska Electrical Health & Welfare Fund*
Order re Cross-Motions for Summary Judgment
Page 9 of 15

While PCS acknowledges the importance of *Shaw* as a central preemption case, it asserts that the Fund "fail[s] to cite other important cases that help further clarify the limits of preemption and distinguish types of cases that fall outside of preemption."[49] PCS cites *The Meadows v. Employers Health Insurance* for its statement that "courts have held that ERISA does not preempt a third-party provider's independent state law claims against a plan precisely because those claims do not 'relate to' the administration of an ERISA plan."[50] In that case, which PCS acknowledges is "not directly on point," an ERISA plan misrepresented to a provider that an individual was a covered participant, resulting in a suit by the provider for breach of contract, estoppel, and misrepresentation.[51] The Ninth Circuit affirmed the district court's ruling that the claims were not preempted because the "state law claims for misrepresentation and estoppel 'make no reference to' and 'function irrespective of' the existence of an ERISA plan." Here, the same cannot be said of PCS's claims, which depend on obligations of the Fund that are outlined in the Plan documents. Furthermore, the Ninth Circuit stated in *The Meadows* that, "In the instant case, that the [individuals] were not beneficiaries of any plan at the time Employers Heath misrepresented the existing coverage is further reason to conclude that The Meadows' claim does not 'relate to' the provisions of the ERISA plan."[52] Finally, the court noted that "the district court's decision is also in line with several policy considerations

---

[49] Docket 104 at 6.

[50] Docket 104 at 7 (quoting *The Meadows v. Employers Health Insurance*, 47 F.3d 1006, 1008 (9th Cir. 1995)).

[51] *Id.* at 1008.

[52] *Id.* at 1010.

3:16-cv-00098-SLG, *Klein v. Board of Trustees of the Alaska Electrical Health & Welfare Fund*
Order re Cross-Motions for Summary Judgment
Page 10 of 15

that militate against preemption" but which do not apply in the instant case, such as the Fifth Circuit's "observ[ation] that insulating plan fiduciaries from the consequences of their own misrepresentations to third-party providers does not further any of ERISA's objectives."[53]

PCS also cites *Blues Cross of California v. Anesthesia Care Associates* and *Catholic Healthcare West-Bay Area v. Seafarers Health & Benefits Plan*, two cases in which claims involving ERISA plans were held not preempted under § 1144.[54] In *Anesthesia Care*, four medical care providers were in a dispute with an insurance company whose Prudent Buyer Plan covered private employer subscribers and their employees, similar to the Fund in this case.[55] However, unlike the instant case, the dispute did not involve medical costs relating to individual beneficiaries. Instead, the case involved "changes in the fee schedules that Blue Cross allegedly made in 1993, 1994, and 1995."[56] Although "[e]ach of the Providers ha[d] some patients who [were] enrolled in the Prudent Buyer Plan as part of a health benefit plan covered by ERISA," the connection between the cause of action and the ERISA plan was more tenuous than here.[57] The court held that provider's claims were not preempted because they "arise from Blue Cross' alleged breach of the provider agreements' provisions regarding fee

---

[53] *Id.* (citing *Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 247 (5th Cir. 1990)).

[54] Docket 104 at 7, 8.

[55] 187 F.3d 1045, 1048 (9th Cir. 1999).

[56] *Id.* at 1049.

[57] *Id.*

3:16-cv-00098-SLG, *Klein v. Board of Trustees of the Alaska Electrical Health & Welfare Fund*
Order re Cross-Motions for Summary Judgment
Page 11 of 15

schedules, and the procedure for setting them, not what charges are 'covered' under the Prudent Buyer Plan."[58] Here, by contrast, what charges are covered under the Plan is at the heart of the dispute. Unlike *Anesthesia*, the instant dispute "encroaches on relationships regulated by ERISA, such as between plan and plan member, plan and employer, and plan and trustee."[59]

Similarly, *Catholic Healthcare West-Bay Area v. Seafarers Health & Benefits Plan* is distinguishable from the present case. There, St. Mary's Medical Center brought state law claims against Seafarers Health and Benefits Plan for breach of implied contract, negligent misrepresentation, estoppel, quantum meruit, and indebitatus assumpsit.[60] The Ninth Circuit held that the claims were not preempted, because "where a third party medical provider sues an ERISA plan based on contractual obligations arising directly between the provider and the ERISA plan (or for misrepresentations of coverage made by the ERISA plan to the provider), no ERISA-governed relationship is implicated[.]"[61] Notably, in that case, the plaintiff represented to the court that "any claims it might have had under Seafarers' plan either have been resolved or waived[.]"[62] Here, however, PCS's claims directly invoke the Plan, whose terms are essential in determining the

---

[58] *Id.* at 1051.

[59] *Id.* at 1053 (citing *General Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1521–22 (9th Cir. 1993)).

[60] 321 F. App'x 563, 564 (9th Cir. 2008).

[61] *Id.* (citing *The Meadows v. Employers Health Ins.*, 47 F.3d 1006, 1008–11 (9th Cir. 1995)).

[62] *Id.* at 565.

3:16-cv-00098-SLG, *Klein v. Board of Trustees of the Alaska Electrical Health & Welfare Fund*
Order re Cross-Motions for Summary Judgment
Page 12 of 15

amounts allegedly owed by the Fund for the Twins' healthcare costs.[63] Thus, declining to recognize preemption in this case would permit an "end-run around ERISA by wholesale incorporation of an ERISA plan into the terms of an implied contract" that the Ninth Circuit warned against in its *Seafarers* decision.[64]

The situation in this case is more akin to that in *Lodi Mem'l Hosp. Ass'n v. Tiger Lines, LLC.* In *Lodi*, a hospital filed an action for quantum meruit and violations of California's Unfair Competition Law, asserting that it was owed reimbursement for medical services provided to beneficiaries of an ERISA plan.[65] Although the hospital attempted to frame its claim as being sufficiently independent from the ERISA plan to avoid preemption under 29 U.S.C. § 1144, the district court disagreed. The court held:

> Absent any basis independent from the provisions of the Plan for Plaintiff's claim that it is owed more for services provided than it has already received, a contention Plaintiff has not made as stated above, the viability of both of Plaintiff's claims must necessarily rest on a claim that Plaintiff is owed more under the provisions of the Plan itself. Such a claim, however, premised on Defendants' obligations to provide benefits to patients pursuant to the terms of the Plan, clearly relates to ERISA. As such, both of Plaintiff's current causes of action conflict with ERISA and those claims must be dismissed on that basis.[66]

The Plan that governs the Twins' coverage is critical to the determination of what amounts are payable to Providence by the Fund for the healthcare provided to the twins.[67]

---

[63] Docket 19 at 2–3, ¶ 7; 6, ¶ 26–31.

[64] *Seafarers*, 321 Fed. App'x at 565.

[65] *Lodi Mem'l Hosp. Ass'n v. Tiger Lines, LLC*, 2015 WL 5009093, at *1 (E.D. Cal. Aug. 20, 2015).

[66] *Id.* at *8.

[67] Docket 97–2 at 10 (Master Services Agreement provides that "Covered Services means health care services provided pursuant to an Eligible Person's Plan.").

3:16-cv-00098-SLG, *Klein v. Board of Trustees of the Alaska Electrical Health & Welfare Fund*
Order re Cross-Motions for Summary Judgment
Page 13 of 15

Thus, the same logic as *Lodi* applies. The amounts PCS claims are owed by the Fund depend on the Plan's definitions of the scope of covered charges and therefore dictates the amount of the Twins' medical charges that the Fund would cover.[68] Therefore, the "claim bears on an ERISA-regulated relationship, *e.g.,* the relationship between plan and plan member[.]"[69] Despite PCS's assertions of an independent basis for its claims, the dispute is not "merely between a health plan and a hospital."[70] Without the Plan, PCS would not have a claim against the Fund, whose selective coverage of the Twins' medical expenses is the sole source of the instant dispute. Resolving the merits of the dispute would require reference to and interpretation of the Plan. It is clear that "the claim is premised on the existence of an ERISA plan" and has a "connection with or reference to" an ERISA plan.[71] Accordingly, PCS's state law claims relate to an ERISA plan and are preempted under 29 U.S.C. § 1144(a).[72]

---

[68] Although PCS seems to suggest that the Medicare guidelines should dictate the amounts charged, the MSA clearly indicates that "A payor must pay a Participating Provider the amount payable under the applicable Plan for Covered Services." Docket 97-2 at 17. Regardless, the applicability of certain Medicare standards is ancillary to the question of whether PCS's claims are preempted.

[69] *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1082 (9th Cir. 2009).

[70] *Fresno Community Hospital and Medical Center v. Souza*, 2007 WL 2120272, *6 (E.D. Cal. July 23, 2007) (holding that because "the Blue Cross contract provides that Community Hospital is entitled to payment for services 'rendered, covered under, and subject to the exclusions and limitations of the relevant Benefit Agreement,'" Community Hospital's claims sufficiently relate to an ERISA plan so as to be preempted).

[71] *Oregon Teamster Employers Tr. v. Hillsboro Garbage Disposal, Inc.*, 800 F.3d 1151, 1156 (9th Cir. 2015).

[72] In light of the foregoing, this Court does not reach the merits of PCS's claims. The disputed facts posited by PCS are not implicated in this order, given that they relate to the merits of the claims. *See* Docket 104 at 1–6. For purposes of finding preemption, there is no genuine issue of material fact, as the existence of the ERISA plan and its coverage of the Twins is not in dispute.

3:16-cv-00098-SLG, *Klein v. Board of Trustees of the Alaska Electrical Health & Welfare Fund*
Order re Cross-Motions for Summary Judgment
Page 14 of 15

## IV. Conclusion

For the foregoing reasons, IT IS ORDERED that Defendant's Motion for Summary Judgment at Docket 96 is GRANTED and Plaintiff's Motion for Summary Judgment at Docket 86 is DENIED.

The Clerk of Court is directed to enter a FINAL JUDGMENT accordingly.

DATED this 12th day of February, 2018 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

3:16-cv-00098-SLG, *Klein v. Board of Trustees of the Alaska Electrical Health & Welfare Fund*
Order re Cross-Motions for Summary Judgment
Page 15 of 15